O’Neall, C. J.,
dissenting, said: I regret to differ with my brethren in these cases, but I think they have come to a conclusion which lacks the warrant of law to sustain it. *532 Therefore I am bound respectfully to dissent, and express my concurrence in the ruling of the Judge below.
The various grounds of the plaintiffs’ motion may be all placed under the question: whether the holder of a Bank Check can maintain an action against the Bank, if it refuses payment ?
In such a state of things, I do not perceive how the right of action arises. The Bank Charter, it is true, provides “that they shall receive money on deposit, and pay away the same to order, free of expense.” 8 Stat. 8, sect. 5. This gives a right of action to the depositor. He can say very truly, in an action, if the Bank fails to pay his checks, “ you have violated your duty to me. I deposited with you upon the faith that you would pay. away the same to my order. Having failed to do this, I claim damagesand the Court would be bound to sustain his action. This right of action was fully sustained on the general obligation resting on a banker, without any such liability arising out of a charter, i-n the case of Maezetti vs. Williams and others, even where there was no damage. 20 Eng. Com. L. R. 412. In Bolin and another vs. Steward, Public Officer of the East of England Bank, (73 Eng. Com. Law R. 593,) it was held, that substantial damages may be recovered against "a banker for dishonoring an acceptance, and checks of a customer, there being sufficient in his hands to meet them. In Brodie vs. The Farmer's and Exchange Bank, tried before me here, a depositor sued the Bank for dishonoring his checks, and recovered a large verdict, which was appealed from, but the appeal never was brought before the Law Court of Appeals.
The right of action existing on the part of the depositor, how can the holder of the check have a similar right ?
To sustain assumpsit, there must be privity of contract. What privity can there be between the holder and the Bank ? I cannot1 perceive any. He takes the check on the credit of the drawer. Legally, we suppose, the depositor *533 says, “ I have funds in the State Bank, and will give you a 'check for my debt to you.” When this is accepted by the holder, on whose credit does he take it ? Unquestionably, on the credit of the drawer. He believes, if his statement be true, he will receive the amount from the Bank. But so far the Bank has nothing to do with the transaction. When the holder presents the check, and the Bank refuses payment, against whom has he the right of' action; clearly it seems to me against him from whom he received it.
It is very true, when A receives money from 0 for the use of B, the latter may recover it, for the consideration is quite sufficient to maintain the promise implied by law. The money in such case .ex equo et bono is the money of B, and A has agreed so to hold it.
But that is not tbe case here. The money in Bank to the credit of the depositor is his money, and no one has the right to claim it, until by order he directs the bank, as his agent, to pay it to another. If the Bank refuses to pay it, how can that person to whom he has appointed payment claim it in an action against the Bank ? He cannot found his'action upon the cheek without an acceptance. Most of the cases relied upon, proceed upon the notion that there is enough to make it be regarded as so much money had and received to the plaintiff’s use, as in Weston vs. Barker, 12 Johns. R., 276, where A assigned securities to B, in trust to dispose of part of the money thereon received to certain purposes, and to hold the balance subject to the order of A, which trust B accepted, and A then directed B to pay the balance to C; B afterwards collected the fund, and it was held that C could recover. That case, it will be seen, goes not upon the order, but upon the notion that the money was in the defendant’s hands to the use of the plaintiff. This, I admit, was ingeniously argued and put by Thompson, 0. J. I think, however, his reasoning was met and its fallacy shown by Spencer, J., in his dissenting opinion, in which he shows that the promise *534 to hold subject to the order of A, was, in fact and law, a promise to A, and an action for its breach lay at his instance, and not at the instance of C. Any other holding would seem to make the chose in action assignable.
In Kendrick vs. Campbell & Clark, 1 Bail. 522, the action was on a bill of exchange drawn on them by Elms. - The defendants had, in writing, before the bill was drawn, engaged that they would accept it. This letter was shown by Elms to Kendrick, whereupon he purchased the bill, and the Court held that this was an acceptance, and the action was maintained on that strange and, as I conceive, far-fetched notion. It is true, as my venerated brother Johnson said, there was "a promise to acceptbut to whom was it made? To Elms, and not to Kendrick, and could impose no legal obligation in his favor. But that case cannot help the plaintiff here. The action on the check has nothing to sustain the notion of acceptance. If it was case, I could understand that the plaintiff’ claiming the duty of- the defendant under the charter -to pay the check, and failing to do this, that he might claim damages possibly for this neglect of duty. But in an action of assumpsit, how he can recover I do not perceive.
The case of Randolph for Porter, assignee of Staats Fox vs. The Planters' and Mechanics' Bank, was sustained on the ground that the plaintiff had purchased from the agent of the Bank a draft on it, and was therefore, entitled to have his money back, if the Bank chose not to pay the draft. 7 Rich. 134.
Unless in law there is foundation for an implied contract, the plaintiffs have nothing upon which they can stand. There is no such foundation, for the contract is express with the depositor, and there oanbot be both an express and an implied contract. The holder of the check cannot sue on the deposit. That gives right of action to the depositor, and as we have seen, he may sue and recover.
It seems to me that there is no right of action, and I make *535 no inquiry as to wbat may be the notions of bankers, or their customers. If they think a different course from that which I have pointed out, best subserves the purposes of business, they have only to pursue it, and not ask the aid of the law. If they think my conclusion is right, then I can only say I regret that hereafter we shall be governed by a different rule.

Motion granted.